| | | |
|---|---|---|
| GLENDA CANTRELL, as Administratrix of | ) | |
| the Estate of Charles Douglas Bell, deceased, | ) | |
| and on behalf of the wrongful death | ) | |
| Beneficiaries of Charles Douglas Bell, | ) | |
| deceased, SHARON BELL, CAYLA | ) | |
| PETIJEAN-BELL, COLYN BRADLEY | ) | |
| PETIJEAN-BELL, and LUCAS CALDWELL, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | No. 1:12-cv-00311 |
| | ) | |
| CITY OF CLEVELAND, TENNESSEE; | ) | |
| CLEVELAND POLICE DEPARTMENT; | ) | |
| WES SNYDER, individually and in his official | ) | |
| capacity as Police Chief of the Cleveland | ) | |
| Police Department; | ) | |
| JANSEN VASSEY, individually and in his | ) | |
| official capacity as an Officer of the Cleveland | ) | |
| Police Department; | ) | |
| JUSTIN D. MAPLES, individually and in his | ) | |
| official capacity as an Officer of the Cleveland | ) | |
| Police Department; and | ) | |
| FICTITIOUS DEFENDANTS A, B, AND C, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF FACT AND LAW IN SUPPORT OF MOTION FOR SUMMARY**
**JUDGMENT FILED BY DEFENDANTS CITY OF CLEVELAND, TENNESSEE AND**
**WES SNYDER, INDIVIDUALLY**

Defendants City of Cleveland and Wes Snyder, in his individual capacity, hereby appear,

by and through counsel, and submit this Memorandum of Fact and Law in support of their

Motion for Summary Judgment.

# I.    PROCEDURAL HISTORY

Plaintiff Glenda Cantrell (hereinafter "Cantrell"), the mother of Charles Douglas Bell, deceased, filed her lawsuit on September 18, 2012. (See Doc. 1).  Prior to any responsive pleading being filed, the Plaintiff filed an Amended Complaint on September 24, 2012. (See Doc. 2).  The primary difference in the two Complaints related to the naming of Defendant Justin D. Maples in his individual and official capacity as an officer of the Cleveland Police Department.  According to the Amended Complaint, the lawsuit arose out of events that occurred on October 2, 2011. (See Doc. 2).  Timely Answers were filed by the City, Wes Snyder and Jansen Vassey.  Officer Maples passed away on May 20, 2012. (See Doc. 2, ¶ 13).

A review of the court's electronic filing system reveals that Officer Maples' estate was never served with process and has not made an appearance.  Taking note of this, the Court issued a show cause order on February 4, 2013 wherein the Court acknowledged that the record reflected that "more than 120 days have passed since the Complaint was filed, and no evidence of record suggests that Plaintiff has effected service on the Defendant." (See Doc. 12).  The Plaintiff was on notice that the Court may dismiss the unserved parties pursuant to Federal Rules of Civil Procedure 4(m), 21, and 41(b), if some type of response was not submitted by the Plaintiff. (See Doc. 12).  In that same order, the Court dismissed the Cleveland Police Department as an entity in this action. (See Doc. 12).  The Plaintiff responded to the Court's show cause order on February 19, 2013 by stating that the City of Cleveland had been effectively served, which is not in dispute by these Defendants. (See Doc. 13).  However, no reference was made to Officer Maples or Maples' estate.  At this juncture, there does not appear to have ever been proper service made on Officer Maples' estate. (See Doc. 13).

Also of note in reference to the procedural history of this case is that after the initial filing of the Amended Complaint on September 24, 2012 wherein the style of the case referenced "Sharon Bell" (wife of the deceased at the time of the incident at issue), Kayla Pettijean-Bell (a purported child of the deceased), Lucas Caldwell (a purported child of the deceased), and Colyn Bradley Pettijean-Bell (a purported child of the deceased), the Plaintiff stopped referring in the case style of her pleadings to any wife or children of the deceased, other than Colyn Bradley Pettijean-Bell. (See Doc. 13, 17, 23, 24, 29 and 31). Further, counsel for the Plaintiff has indicated specifically that he does not represent Sharon Bell, who at all times relevant and on the date of Charles Douglas Bell's death, was the deceased's spouse. (Cantrell depo, p. 11, l. 24 – p. 12, l. 7; p. 99, ll. 11-13)(Exhibit 1). Depositions of Cantrell, Officer Vassey, Wes Snyder (Police Chief for the City of Cleveland at the time of the incident at issue) and David Bishop (the current Police Chief for the City of Cleveland) have been taken. Written discovery has been exchanged by the parties. The summary judgment issues now raised herein are ripe for this Honorable Court's review.

## II.    FACTS

In the afternoon of October 2, 2011, Officers Vassey and Maples learned of the location of Charles "Doug" Bell (hereinafter "the deceased") and approached him with the intent of serving warrants on him and making his arrest. (Am. Compl. - Doc. 2, ¶¶ 13, 14, 17, 19; See Warrants attached as Cumulative Exhibit 2). Prior to arriving at the hotel, the officers had been advised that the deceased would likely falsely identify himself as his brother, Roger Bell, and would provide a social security card identifying himself as Roger Bell. (Doc. 2, ¶ 15). Sure enough, upon making contact with the deceased and asking himself to identify himself, the deceased misidentified himself as "Roger" Bell. (Doc. 2, ¶ 19). Upon being asked by Officer

Vassey whether he had any identification on him, the deceased provided his brother's social security card. (Vassey depo, p. 70, ll. 8-12). The officers were aware of tattoos and a certain "Mohawk" hairstyle that would help accurately identify the deceased, and when the deceased was asked to show the officers his tattoos and his hairstyle the deceased was accurately identified as Charles Douglas Bell. (Vassey depo, p. 67, ll. 2-13, p. 70, l. 13 – p. 71, l. 5; p. 71, ll. 17-19). The deceased knew warrants existed for his arrest, but planned on trying to elude capture for at least another three (3) months. (Cantrell depo, p. 103, l. 24 – p. 104, l. 15).

Prior to speaking with the deceased, the officers first parked their cars and walked up to the room where they had been advised the deceased may be, and they found the door to the room open. (Vassey depo, p. 68, ll. 22-24). When they approached the room, Officer Maples stood in and looked through the open doorway and asked the deceased to come out of the room to talk to him for a minute. (Vassey depo, p. 69, ll. 1-3; p. 106, ll. 16-25; p. 107, l. 19 – p. 108, l. 5). Officer Vassey was outside the room. (Vassey depo, p. 106, l. 24 – p. 107, l. 17) (Exhibit 3 attached hereto and previously labeled as Exhibit 5 to Vassey's depo). At the officers' request, the deceased walked out of the room and onto the balcony hallway. (Doc. 2, ¶20). Vassey asked the deceased if he had any weapons on him and the deceased indicated he had a knife in his right front pocket. (Vassey depo, p. 69, ll. 4-7). After the officers identified the deceased as described above, Officer Maples told the deceased to turn around and put his hands behind his back because he had four (4) warrants for his arrest. (Vassey depo, p. 72, ll. 1-3). The deceased did not immediately follow Maples' request and instead asked what the issue was about and what the warrants were for. (Vassey depo, p. 72, ll. 4-9). Maples once again told the deceased to turn around and put his hands behind his back, but instead the deceased turned around and grabbed hold of the rail with a strong grip in a manner that made Vassey think that the deceased was not

planning to willingly let go of the rail. (Vassey depo, p. 72, ll. 10-17). As Vassey walked

towards the deceased to put handcuffs on him, the deceased pushed off the rail with both hands,

slung his legs out and jumped over the balcony. (Vassey depo, p. 72, ll. 18-21). The deceased

landed in a manner that caused head injuries. (Am. Compl. – Doc. 2, ¶ 22). Vassey ran down the

stairs and felt for a pulse, which he found on the deceased's neck. (Vassey depo, p. 72, l. 24 – p.

73, l. 2). While Vassey ran down the stairs, Maples was on the radio calling for a supervisor and

an ambulance to come to the scene. (Vassey depo, p. 73, ll. 6-8). A female in the room with the

deceased also ran down the stairs and began grabbing the deceased, at which time Vassey told

her to get off of the deceased due to the potential severity of the injuries. (Vassey depo, p. 73, ll.

10-13). Maples also made it to the deceased and started feeling his ribs and telling the deceased

to hang in there, that everything was going to be okay. (Vassey depo, p. 73, ll. 19-25).

When the EMS arrived on the scene, Vassey attempted to speak with the female who was

in the room initially, but the female was hysterical and was not talking at that time. (Vassey

depo, p. 74, ll. 6-20). A few minutes later, Vassey again attempted to speak with that same

female who made her first statement about what she saw while still under the stress of

excitement caused by the event: she said that she saw the deceased jump. (Vassey depo, p. 76, ll.

11-16).

More police officers arrived on the scene, including Walter Hunt, who works for the

District Attorney's (hereinafter "D.A.") office. (Vassey depo, p. 88, l. 16 – p. 89, l. 5). David

Bishop, who is now the Chief of Police, was at the time of this incident the Captain over the

particular unit involved, and when he received a call from his Lieutenant about the incident, per

normal department protocol in matters of this type, he contacted the D.A. and asked for an

immediate outside agency to come in and investigate. (Bishop depo, p. 28, ll. 15-21; p. 29, l. 21 –

p. 30, l. 7). Bishop also requested the TBI come to the scene. (Bishop depo, p. 30, ll. 1-4). The D.A. requested a TBI investigation, which was conducted and cleared the officers of wrongdoing. (Snyder depo, p. 48, l. 19 – p. 49, l. 15).

The State of Tennessee requires all officers to maintain a minimum forty (40) hours a year of in-service training in order to remain certified as a police officer. (Vassey depo, p. 132, ll. 12-24). Snyder was a POST-certified police officer and he maintained his annual forty (40) credit hours of required in-service hours at all times relevant. (Snyder depo, p. 63, l. 25 – p. 64, l. 21). Snyder was not present at the scene of the events at issue. (Snyder depo, p. 26, l. 11 – p. 27, l. 11).

Officers Vassey and Maples maintained their state required training to maintain their status as POST-certified police officers in the State of Tennessee at all times relevant. (Vassey depo, p. 132, l. 25 – p. 133, l. 8; Bishop depo, p. 87, l. 22 – p. 88, l. 7). The City of Cleveland is a nationally and state accredited police department and its policies and procedures are based on national requirements. (Snyder depo, p. 19, l. 14 – p. 20, l. 17)(Bishop depo, p. 88, 11. 8-21). The City of Cleveland has not had an officer hold an arrestee over a balcony from, at least, 1984 to the present in the manner described by the Plaintiff in the Complaint. (Affidavit David Bishop, ¶ 2).

Neither Defendant Maples nor his estate has ever been served in this matter with a copy of the Complaint in a timely fashion and in accordance with Federal Rules of Civil Procedure. (See ECF system).

The Plaintiff has no law enforcement experience, has no personal knowledge of Officer Vassey's training, has no personal knowledge of Officer Maples' training and has no personal knowledge as to the requirements of the City of Cleveland police officers as it relates to training.

(Cantrell depo, p. 89, l. 13 – p. 90, l. 8). The Plaintiff has no personal knowledge about the policies and procedures of the City of Cleveland Police Department. (Cantrell depo, p. 90, ll. 23-25). The Plaintiff has no personal knowledge whether excessive force was used by any City of Cleveland officer at any time before October 2, 2011. (Cantrell depo, p. 91, l. 24 – p. 92, l. 3). The only "evidence" the Plaintiff has related to the training of officers regarding making an arrest or the reasonable use of force is the Plaintiff's own opinion, which is unsupported by any prior experience. (Cantrell depo, p. 89, ll. 19-21; p. 95, l. 7 – p. 96, l. 1). The expert deadline in this matter has passed and the Plaintiff has not solicited or identified any expert who has given any opinion related to the policies and procedures or customs and practices of the City of Cleveland Police Department.

## III.    STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 56(c), this Court should enter summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. If the moving party presents evidence sufficient to support a motion under Rule 56, the non-moving party may not simply rest on its pleadings, but must come forward with some significant, probative evidence to support its claim. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); See also Guarino v. Brookfield Tp. Trustees, 980 F.2d 399 (6th Cir. 1992), which provides that triers of fact do not have the responsibility to search *sua sponte* the record for genuine issues of material fact. The moving party must provide the grounds upon which it seeks summary judgment, but does not need to provide affidavits or other materials to affirmatively negate the non-moving party's claims. Celotex, 477 U.S. at 323. The non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims. Celotex, 477 U.S. at 324; McLean v. Ontario, Ltd., 224 F.3d 797, 800 (6th Cir.

2000). The moving party is entitled to summary judgment if the non-movant fails to make a sufficient showing on an essential element for which it bears the burden of proof. <u>Celotex</u>, 477 U.S. at 323.

## IV.    LAW AND ARGUMENT

**A.  It is undisputed that Snyder was not on the scene of the incident at issue in this matter, therefore, the claims raised against him in his individual capacity should be dismissed.**

It is undisputed that Wes Snyder (hereinafter "Snyder") was not at the Whitewater Lodge and had no firsthand involvement with the matters raised in the Complaint. (Cantrell depo, p. 92, ll. 10-16; Snyder depo, p. 27, ll. 9-11).  Nonetheless, and despite this knowledge, the Plaintiff has filed suit against Snyder, in his individual capacity, alleging he unlawfully detained, searched, seized, and used unreasonable and excessive force against Charles Douglas Bell, the deceased.

At all times relevant, Snyder was the Chief of Police for the City of Cleveland.  At all times relevant, Snyder maintained his state required forty (40) hours of in-service training every year while he was with the City of Cleveland.  At all times relevant, he oversaw a nationally-accredited police department whose policies and procedures were based on national requirements.

As a matter of law, there simply is no justification for Snyder for being named as an individual defendant.  It is an undisputed fact that he was not present at the Whitewater Lodge at any time relevant to the claims made in the Complaint.  It is respectfully submitted Snyder should be dismissed as it pertains to any allegations asserted against him in his individual capacity.

**B. In the event this Court finds that Snyder should remain in this case despite the fact he undisputedly was not at the scene at issue at any time relevant, then it is respectfully submitted he is entitled to qualified immunity.**

As stated above, Snyder was not at the scene of the incident at issue, and, therefore, he should be dismissed from this claim in his individual capacity. In the alternative, Snyder is entitled to qualified immunity as at all times relevant his actions were reasonable and necessary, given the circumstances he faced, which is to say he did not face any circumstances relative to the Plaintiff's claims and therefore could not have acted unreasonably. It is somewhat difficult to submit a qualified immunity argument for an individual who was not present at the scene of the events alleged in the Complaint, but, nonetheless, making this alternative argument, Snyder would be entitled to qualified immunity because he did not commit any violation of the deceased's constitutional rights.

Courts engage in a two-step analysis when determining whether qualified immunity applies: (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." Smoak v. Hall, 460 F.3d 768, 777 (6th Cir. 2006). A court "may address these prongs in either order; indeed, either one may be dispositive." Hoover v. Walsh, 682 F.3d 481, 492 (6th Cir. 2012) (citing Pearson v. Callahan, 555 U.S. 223, 236 (2009)). If the official's conduct was objectively reasonable, then the individual should still enjoy qualified immunity. See Sample v. Bailey, 409 F.3d 689, 696 n. 3 (6th Cir. 2005).

"The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal constraints on particular police conduct." Estate of Carter v. City of Detroit, 408 F.3d 305, 310-11 (6th Cir. 2005) (quoting Saucier v. Katz, 533 U.S. 194, 205 (2001)). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law."

Humphrey v. Mabry, 482 F.3d 840, 847 (6th Cir. 2007) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).  "Once the defense of qualified immunity has been raised, it is the plaintiff's burden to demonstrate that the defendants cannot avail themselves of it."  Hoover, 682 F.3d at 492 (citing Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006)).

The second prong of the qualified immunity analysis requires a showing on the part of the Plaintiff that the constitutional right allegedly violated was clearly established in light of law existing at the time of the alleged deprivation.  But as Justice Kennedy explained in Saucier, this analysis requires a more particularized inquiry:  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 201-02. See also Wilson v. Layne, 526 U.S. 603, 615 (1999) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established").  Only precedent from the United States Supreme Court or the Sixth Circuit can clearly establish a right. Camreta v. Greene, 131 S. Ct. 2020 at 2033, n. 7 (2011).

The dispositive question is whether it would be clear to a reasonable officer "from direct holdings, from specific examples described as prohibited, or from the general reasoning that a court employs … that his conduct was unlawful in the situations he confronted."  Kowolonek v. Moore, 463 F. App'x 531, 537 (6th Cir. 2012).  Police officers are entitled to a " 'fair and clear warning' of what the Constitution requires" such that "every 'reasonable official would have understood that what he is doing violates' " the Constitution's clearly established mandates. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2086-87 (2011) (Kennedy, J. concurring).  Thus, where the official's "actions fall near enough to the 'hazy' border separating illegal from legal conduct []

qualified immunity [] attach[s]." <u>Bing ex rel. Bing v. City of Whitehall, Ohio</u>, 456 F.3d 555, 571 (6th Cir. 2006).

The Plaintiff in this matter simply cannot meet her burden of production to create a genuine issue of material fact as to the prima facie element to her claim at trial. The Plaintiff cannot show that Snyder engaged in some type of conduct that would satisfy the essential elements of the federal claims the Plaintiff raised in her lawsuit. Because of this Snyder is entitled to qualified immunity. Further, the Plaintiff cannot prove that there was any specific right that is in question that was clearly established at the time of the alleged conduct that would have resulted in Snyder's actions or inactions being objectively unreasonable. As such, he is entitled to qualified immunity.

**C. The City is not liable to the Plaintiff pursuant to 42 U.S.C. § 1983 because the Plaintiff cannot prove that there was a failure to train, nor was there any type of policy, custom or practice that amounted to deliberate indifference of the deceased's constitutional rights.**

The Plaintiff has asserted constitutional violations against the City claiming, in short, that the City failed to properly train Officers Vassey and Maples, and that the City acted with deliberate indifference as it related to policies, procedures and customs that it implemented. (Doc. 2, ¶¶ 40-42). As can be seen in the Complaint, the Plaintiff alleges that there has been an adoption of "policies, procedures, practices or customs…that allow…the use of excessive force", that the City was deliberately indifferent to the rights of the decedent to be free from excessive force and unreasonable seizure, and that it was a result of the deliberate indifference of the City that the decedent was killed by Cleveland officers. <u>Id.</u>

Despite these "allegations", the Plaintiff has absolutely no proof to support her contentions. She cannot support her claims that the City has a policy or procedure that allows for arrestees to be held over a balcony and dropped to the ground below. If such a policy exists,

11

then now is the time for the Plaintiff to produce it. If this has occurred enough times to constitute a custom or practice, which would run counter to Chief Bishop's affidavit, then, again, now is the time for the Plaintiff to produce said evidence. Even if the Plaintiff's facts are true, one event over a thirty (30) year period hardly establishes a custom. Undisputed facts reveal the Plaintiff has no experience with law enforcement. She has no knowledge of the policies and procedures of the City of Cleveland Police Department. She has no knowledge of the training implemented by the Cleveland Police Department or any knowledge about the specific training provided to Officers Vassey or Maples. Further, it is undisputed that the City of Cleveland Police Department has a policies and procedures manual that is both nationally and state accredited. It is undisputed that Officers Maples and Vassey, as well as Snyder, received the required training hours mandated by the State of Tennessee during the relevant time frame. As such, the Plaintiff has no proof to support her claim that a lack of training of the officers resulted in a constitutional violation. The proof in the summary judgment record establishes the officers received the State of Tennessee required level of training.

The Plaintiff has failed to retain any expert witness to support her mere "allegations". As is noted *supra* in Section III, "the non-movant is not entitled to a trial based solely on its allegations, and must submit significant probative evidence to support its claims." Celotex, 477 U.S. at 324. Here, even assuming a prima facie showing could be made of a constitutional violation by the individual officers, which is strongly disputed, there still is no basis for municipal liability under § 1983. Despite the Plaintiff's mere allegations, there is no portion of the policy that led to or resulted in officers committing a constitutional violation. The same thing can be affirmatively stated as it relates to the Plaintiff's "custom" or training arguments.

A governmental entity cannot be held liable under § 1983 for the acts of its employees under a theory of respondeat superior. Monell v. Dept. of Soc. Servs. of City of New York, 436 U.S. 658, 691 (1978). Instead, as an additional burden to proving an underlying constitutional violation, the Plaintiff must show that the municipality established a policy or custom that was "deliberately indifferent" to a third party's constitutional rights. Id. In the Sixth Circuit, a policy or custom claim can be established by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. Burgess v. Fischer, 735 F.3d 462, 478 (6th Cir. 2013) (citing Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005)).

A failure to train claim requires a showing of something more than an underlying constitutional violation. Instead, the Plaintiff must plead and come forward with evidence of "prior instances of unconstitutional conduct demonstrating that the [municipality] ha[d] ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." Burgess, 735 F.3d at 478. There is no such evidence in this matter. Where a Plaintiff alleges the municipality has a custom of tolerance or acquiescence of federal rights violations, he must show "that there was a pattern of inadequately investigating similar claims." Id. Only where the actor was the final municipal policymaker may a single act result in liability. Id. at 479. As the Supreme Court held in Monell, the municipal course of action must be the legal and proximate cause of the Plaintiff's harm, meaning any allegations of post hoc failure to discipline are of no moment. Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 481-84 (1986)).

13

In this matter, the Plaintiff's Complaint contains only bare allegations of a failure to train. There simply is no proof of any prior, similar conduct sufficient to support a municipal liability claim. The Plaintiff knows of no other prior conduct similar to what is alleged to have occurred in this matter. As such, the failure to train allegations are wholly without merit and should be denied.

Likewise, the Plaintiff cannot prove that some portion of the policy of the City of Cleveland Police Department or any type of custom of the City of Cleveland Police Department resulted in a constitutional violation in this matter. The only policy and procedures manual utilized by the City of Cleveland has been nationally accredited. The Plaintiff cannot point to a single portion of the policy that reveals some type of illegality, much less an illegality that has been ratified through an official with the City who has final decision-making authority.

In summary, the Plaintiff has no evidence of any policy, custom, procedure or training that resulted in a constitutional violation of the Plaintiff. Further, it is evident that the actions of Officers Vassey and Maples were, at all times relevant, reasonable. As such, no constitutional violation occurred and the City cannot be held liable under § 1983 as a result.

**D. The Plaintiff's state law claims are without merit and should be denied.**

   **1. The Plaintiff's essential claims in this case amount to intentional torts, and as such, pursuant to the Tennessee Governmental Tort Liability Act, the City retains immunity.**

A review of the Complaint reveals the Plaintiff's position is that while serving arrest warrants on the Plaintiff one officer intentionally lifted up the deceased's leg up while pushing his torso over the railing, dangling the deceased over the rail while the other officer simply stood by and watched. (Doc. 2, ¶ 21). Stated another way, the Plaintiff has alleged that one officer intentionally pushed the deceased over the rail and intentionally dangled him over the rail by

holding a pant leg while the other officer did nothing to stop it. Obviously, these Defendants adamantly deny such an event occurred at all. However, if it did occur in the manner the Plaintiff described, then this action surely amounts to an intentional act, which entitles the City to immunity. (See Tenn. Code Ann. § 29-20-205, which reads, in part, as follows: Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of: (2)…civil rights. Tenn. Code Ann. § 29-20-205(2)).

The Plaintiff's specific legal claims in this case are set out under "Count I" and "Count II" of the Amended Complaint. These sections of the Amended Complaint specifically reference "civil rights". Stated another way, the Plaintiff's allegations in her Complaint arise out of a purported violation of the deceased's civil rights. As is set out above, immunity is not removed from a governmental entity for a violation of civil rights. Accordingly, the state law claims filed against the City of Cleveland should be dismissed.

The Tennessee Court of Appeals' opinion set out in Parker v. Henderson Co., 2010 WL 377044 (Tenn. Ct. App. 2010), is helpful on this issue. The City argued in that case that the injuries alleged arose out of a civil rights violation. The Court disagreed holding the Plaintiff did not plead a civil rights violation occurred. Parker at *5. The Plaintiff here, of course, did plead a civil rights violation. Because of that claim, and because of the requirements of Tenn. Code Ann. § 29-20-205(2), the City is immune from the state law allegations asserted by the Plaintiff.

The Plaintiff has asserted damages for "emotional pain and suffering". Defendants interpret this to mean mental anguish. Tenn. Code Ann. § 29-20-205(2) specifically provides the City with immunity for mental anguish. As such, the claims for damages related to emotional or mental pain and suffering should be dismissed against the City. Of course, Chief Snyder was not

present, so Defendants would rely on the same arguments related to Chief Snyder on this issue as has been raised on his behalf throughout this brief. Specifically as it relates to Snyder, these Defendants submit that no state law claims can be maintained against him in his individual capacity due to his complete lack of involvement in this matter.

Plaintiff also asserts a claim for consortium damages in her Complaint. The Sixth Circuit has held that claims under 42 U.S.C. § 1983 are "entirely personal to the direct victim of the alleged constitutional tort…[and] no cause of action may lie under § 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries allegedly suffered personally by the victim's family and person." Claybrook v. Birchwell, 199 F.3d 350, 357 (6th Cir. 2000). As such, the loss of consortium claim asserted under the federal statutes raised by the Plaintiff in her Complaint fail as a matter of law and should be dismissed.

### E. The Plaintiff is not entitled to punitive damages.

As to the City of Cleveland, the law is clear that municipalities cannot be held liable for punitive damages under federal law, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("Because absolute immunity from such damages obtained at common law and was undisturbed by the 42d Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983"), nor are municipalities liable for punitive damages under state law. Johnson v. Smith, 621 S.W.2d 570, 572 (Tenn.Ct.App. 1981) ("Under the Tennessee Governmental Tort Liability Act, punitive damages are not recoverable from either the governmental entity or the employee in an action arising from the negligence of the employee").

As to Snyder, the standard for punitive damages was pronounced by the Supreme Court in <u>Smith v. Wade</u>, 461 U.S. 30 (1983). In <u>Wade</u>, the Supreme Court held that punitive damages could be assessed against a defendant in a § 1983 action where that defendant acts with "reckless or callous indifference to the federally protected rights of others." This standard requires a high degree of negligence which the law characterizes as "reckless" to assess punitive damages against a § 1983 defendant. <u>Grimm v. Leinart</u>, 705 F.2d 179, 182 (6th Cir. 1983). There is no proof in the record that Snyder acted "reckless" (or acted at all for that matter) with regards to the Plaintiff's constitutional rights. Accordingly, the Plaintiff's claim for punitive damages should be dismissed.

## F.  <u>CONCLUSION</u>

For the foregoing reasons, Defendants City of Cleveland and Wes Snyder hereby respectfully request this Honorable Court to enter Summary Judgment in their favor as to all of Plaintiff's claims as there are no genuine issues of material fact and these Defendants are entitled to judgment as a matter of law.

RESPECTFULLY submitted this 18th day of February, 2014.

CITY OF CLEVELAND, TENNESSEE AND
WES SNYDER

By: /s/ Benjamin K. Lauderback
BENJAMIN LAUDERBACK, BPR No.
DAN R. PILKINGTON, BPR No. 024660
WATSON, ROACH, BATSON,
ROWELL & LAUDERBACK, P.L.C.
Attorneys at Law
P.O. Box 131
Knoxville, Tennessee  37901-0131
(865) 637-1700

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this filing through the Court's electronic filing system:

> J.D. Lee
> LAW OFFICE OF J.D. LEE
> The Lee Building
> 422 S. Gay Street, Third Floor
> Knoxville, Tennessee 37902
>
> Dennis G. Pantazis, Jr.
> Craig L. Lowell
> WIGGINS CHILDS QUINN & PANTAZIS, LLC
> The Kress Building
> 301 19th Street North
> Birmingham, Alabama 35203
>
> Ronald D. Wells
> Keith Grant
> ROBINSON, SMITH & WELLS
> 633 Chestnut Street, Suite 700
> Chattanooga, Tennessee 37450

Dated this 18th day of February, 2014.


/s/ Benjamin K. Lauderback