# VASSEY CASE EXPERT WITNESS REPORT

## Sgt. Jeffrey R. Ensor, *JCPD retired*

### Law Enforcement Background

My name is J.R. (Jeff) Ensor, and I have been involved in law enforcement for 35 years. I currently work with the Northeast Regional Police Academy in Greeneville, Tennessee as adjunct faculty, teaching Use of Force issues and the proper use of force, and serve as an instructor in the Academy's Firearms Training program. For over 15 years, I was the Academy's lead instructor in defense tactics for police officers. Since 2008, I have worked with the Governor's Highway Safety Office in the field of Law Enforcement Instructor Development ("LEID"). I am the state's lead instructor in LEID.

When I retired from the Johnson City, Tennessee Police Department in 2008 after 31 years of service, I was serving as head of the Training Department. During my career, I held Police Officers Standards and Training (POST) instructor certifications on firearms, use of force continuum, defense tactics, and street survival. I wrote lesson plans in these fields and taught them, among many other such issues, for JCPD.

I also wrote, implemented and taught the department's Use of Force policy to our officers. I provided evaluation of cases in which force was used by those officers on the streets and conducted a presentation on Use of Force at the Tennessee Law Enforcement Training Officers Association convention in 2008.

I have also conducted classes for citizens, the military, students, churches, and business professionals across Tennessee on these and other related topics, including citizen rights. Since



1987, I have trained thousands of officers in defense tactics, emphasizing the use of what the courts deem to be objectively reasonably force.

My educational background includes an Associate degree from Walters State Community College in Public Safety Science; a Bachelor degree in Criminal Justice from East Tennessee State University and a Masters degree in Adult Education from Tusculum College in Greeneville, Tennessee. I hold many certifications in various areas of law enforcement expertise. My curriculum vitae is attached.

In a Knoxville federal court case in 2005, it was ruled that I am an expert witness on the issues of use of force, the force continuum, and excessive force (see attached copy).

I have not testified or been deposed in any cases in the past four years. I was scheduled to testify in a police use of force case in August but a mistrial was declared just prior to my taking the stand.

I am billing my time in this matter, for study, $100 per hour; and for testimony, $150 per hour.

### Charles Douglas Bell Case Particulars

Evidence indicates that on October 2, 2011, officers Maples and Vassey went to the Whitewater Lodge to arrest Charles Douglas Bell on outstanding warrants involving failure to pay child support, failure to serve jail time and a violation of probation. Statements indicate that they located Mr. Bell in a room on the second floor, asked him to step outside and conducted the investigation on the walkway of the balcony. During the contact Mr. Bell lied to the officers and told them he in fact was his brother and produced items of identification stolen from his brother in an attempt to deceive the officers and avoid arrest. After concluding that this person was

Douglas Bell, Officer Maples told Bell he was under arrest and to turn around and place his hands behind his back. Statements indicate that Mr. Bell turned around appearing to cooperate then suddenly grabbed the railing and jumped over it in an obvious attempt to escape and evade the arrest. Mr. Bell then fell, striking his head and sustaining an injury that proved fatal.

## Opinion Basis

In the Charles Douglas Bell case, I have read and reviewed the TBI Investigative Report, witness statements, autopsy and toxicology reports, the statement of Amanda Shields dated July 25, 2012 and the deposition of Jansen Vassey, which were provided to me by the law firm of Robinson, Smith and Wells. My opinion is based on my review of these documents.

## Use of Force Synopsis

There is no evidence that indicates the officers used excessive physical force and there is little credible evidence of any force in this case. In my opinion, because of how fast the situation occurred, the totality of the circumstances, the statements of all eyewitnesses, the TBI investigative report, the coroner's and the Attorney General's findings in the case, Mr. Bell was injured and later died from injuries suffered in his attempt to flee and escape from police. There is no evidence to indicate that any of actions by the officers directly injured Mr. Bell. Nothing in either of the officers' statements indicate that officers Maples or Vassey struck, kicked, punched, maced, tased, grabbed or had any other physical contact with Mr. Bell prior to his fall.

His death was not due to any act of force on the officers' part, as is evidenced by the following:

His mother, Glenda Cantrell, later told an investigator that her son was running from the law and that he told her "he wouldn't go to jail", indicating he planned to try to evade arrest if he was confronted. This he did.

Bell's girlfriend, eyewitness Amanda Shields, stated Bell lied to police about his identity; that he failed to cooperate with police; that he was going to flee from officers by trying to "jump the railing by lifting his legs to the left" and the nearest officer to Bell (later identified as Officer Maples) grabbed both Bell's legs. After that, Shields stated, Bell's body and head slapped against the railing and the officer "let go".

Autopsy results showed Mr. Bell's weight as over 160 pounds. It is unlikely that, under these circumstances, anyone could have been successful in holding Mr. Bell and keeping him from falling. Also, the autopsy listed Bell's height as 6 feet, so it would be reasonable that Mr. Bell could have vaulted the rail which was 60 inches high.

Other eyewitness reports confirm Mr. Bell attempted to evade police by jumping the railing, although due to the location of these witnesses, the fact that their statements were made 17 days after the incident and that the witnesses may have discussed the incident with each other before giving statements, there are some disparities; though none refute that Bell attempted to flee the scene as is evidenced in the TBI report.

There is nothing to show that either officer used excessive force on Mr. Bell. As they attempted to gain his cooperation, Mr. Bell feigned cooperation by turning and placing his hands behind him. Then, in an instant, Bell grabbed the railing and jumped.

Even if Amanda Shields' July 25, 2012 statement had corroboration, which it does not, or if it otherwise was provable that Maples grabbed Mr. Bell's legs or ankles, officers Maples and Vassey were in a situation that was "tense, uncertain, and rapidly evolving" which is

declared an appropriate precursor to the use of force, as stated by the U.S. Supreme Court in the case of Graham v. Connor (490 U.S. 386). In other words, since Mr. Bell escalated from being verbally resistive, (i.e., lying and verbally resisting) to becoming actively resistive (i.e., grabbing the rail and jumping), a reasonable officer would have grabbed or attempted to grab Mr. Bell in order to place him on the ground and handcuff him -- as properly-trained officers would do. I find no evidence of excessive force and no evidence of willful or malicious intent on the part of the officers in this case to deprive Mr. Bell of any constitutional rights. The officers were attempting to serve warrants and effect a lawful arrest. Mr. Bell had no right to escape or evade a lawful arrest.

### Reasonable Use of Force

Officers are constantly required to make split second decisions that may have severe, life-threatening consequences on the offender, the officers and the citizens they serve. The primary goal of an officer's efforts when making an arrest is to gain and maintain control of the subject, while applying a reasonable amount of force to effect the arrest. Each enforcement encounter resulting in the utilization of force should be in the form of escalation, stabilization, and/or de-escalation. The utilization of force is based upon the actions or the threats presented and the subject's degree of compliance or non-compliance.

Police departments commonly utilize the following criteria for assessment of use of force. Ultimately, <u>the suspect's actions dictate the actions of the officer(s)</u>. There are five major actions that are to be assessed.

1. Compliant (cooperative), i.e. fully complies with the officer's orders.

2. Resistant (passive), i.e. the subject verbally refuses to comply with the officer's commands.

3. Resistant (active), i.e. the subject is exhibiting physical or mechanical defiance to the officer's control.

4. Assaultive (physical injury), the officer has the perception of an attack on the officer or others.

5. Assaultive (serious physical injury/death), this level of noncompliance poses the most serious threat to the officer's safety. The officer's objective reasonable assessment is that such assaultive actions by the subject could result in death or serious physical injury to the officer or others.

## EVALUATION

In an effort to understand the actions of officers Maples and Vassey in this case, evidence indicates that Mr. Bell's first actions were uncooperative, deceptive/passive-resistant. At the point when Mr. Bell grabbed the rail and raised his feet to flee, his actions became resistant/active.

All actions of search and seizure of persons by agents of the government must be reasonable. The test of reasonableness is a common sense evaluation of what another "objectively reasonable" officer would have done in the same circumstances.

While "objective reasonableness is not capable of precise definition or mechanical application," (Graham v. Connor) objective reasonableness will be determined at the instant the force was used. The reasonableness of the officer's decision must be based on the facts and circumstances known to the officer at the time the force was used. It must be noted that the

standard of objective reasonableness set forth in the Fourth Amendment does not require that the officers choose the least intrusive level of force, only a reasonable one.

Based on all witness statements, officers Maples and Vassey obviously did not have time for a calm, thoughtful deliberation, as the event became tense, uncertain, and rapidly evolving. Whether Maples grabbed or attempted to grab Mr. Bell as Bell jumped the rail is questionable, due to the eyewitnesses' statement disparities. However, attempting to grab a fleeing felon is not only a reasonable law officer's response but is an action he is trained to respond to in that manner.

## OPINION

1. Whether Mr. Bell was grabbed or grabbed at in his attempt to flee is irrelevant. If there was no grabbing at all by the officer(s), there was no force used. If there was grabbing or attempted grabbing involved, the force was objectively reasonable.

2. The detention and search of Mr. Bell was reasonable, in that:

   the officers were advised of valid outstanding warrants against Bell;

   the officers had been given a credible and accurate description of such physical characteristics as Bell's mohawk hairstyle and specific tattoo markings;

   the officers had been informed Bell would attempt to pass himself off as his brother by showing his brother's stolen Social Security card to prevent being arrested; and,

   there was indication of drug use (marijuana odor) in the room where Bell was encountered, which would likely, reasonably and appropriately, have resulted in

investigative measures by the officers whether or not Bell was the actual person they were seeking.

3. No excessive force was used by officers after Bell jumped from the balcony.

The autopsy, and the Attorney General's letter to request case closure, both stated that there was no other trauma to Bell aside from what he sustained in the fall. Some statements claim that Bell was kicked by one or both officers after he was injured, but the majority of witness statements mentioned no such action. I can find no evidence of excessive use of force here.

It is my opinion also that, had Mr. Bell initially cooperated with the officers, he would have been taken into custody without incident and had his day in court, which would have resolved the issue in a safe, sensible, and prudent manner. Mr. Bell's lying to the officers, resistance during arrest, and attempting to escape, were the proximate cause of the events leading to his injuries and subsequent death.

*[signature]*

J.R. (JEFFREY R.) ENSOR, SR., *JCPD retired*
209 John Alfred Loop
Elizabethton, TN 37643

# Jeffrey R. Ensor, Sr., sergeant
# Johnson City Police Dept., *retired*

| | |
|---|---|
| 1986 to present | Adjunct faculty, Walters State Community College, Morristown, TN |
| | Staff instructor, Northeast Regional Police Academy* <br> *have trained 3,000+ police officers in various aspects of law enforcement |
| 1977 – 2008 | Johnson City Police Department, Johnson City, TN |
| | At retirement was serving as training sergeant, providing and facilitating training for officers in all key areas including defense tactics, use of force, firearms, etc. |
| | Led department's Community Relations Division, 1988-92 |
| | Served as department's liaison sergeant to Public Safety Director |
| | Served 16 years as second-in-command on JCPB SWAT team |

TRAINING CERTIFICATIONS
State Peace Officer's Standards and Training Commission certified trainer in:
- defensive tactics
- firearms
- patrol techniques
- SWAT
- physical training
- street survival
- domestic disturbances

Also certified to teach in:
- Taser, less lethal conducted energy weapons
- ASP expandable baton, PR-24 baton, M.E. B. expandable baton and self-defense techniques and use of force continuum
- aerosol restraining systems, including MACE and AERKO
- less lethal munitions (beanbag rounds, rubber projectiles, blunt trauma, etc.)
- chemical agent (including DEFTEK) and teargas deployment
- PPCT (pressure point control techniques)
- MDTS (Monadnock Defense Tactics System)

Other areas of specialty training:

- counter terrorism, hostage negotiation and advanced firearms
- critical incident command and dignitary protection
- hazardous materials

## EDUCATION

- Masters in Adult Education, Tusculum College, 2004
- Bachelor of Science and Associate degrees in Criminal Justice, East Tennessee State University, 1994
- Associate in Criminal Justice, Walters State Community College, 1990

## CURRICULA/PROGRAMS DEVELOPED

- S.H.I.E.L.D. – teaches life skills and leadership development to high school juniors and seniors
- Citizen Police Academy – first civilian training program in Tennessee
- Alumni Association – ongoing activities for Citizen Police Academy graduates
- Know Your Rights – teaches citizens about their rights
- Police Explorer Program – nationwide program of Boy Scouts of America, Inc.; hands-on training for aspiring officers in high school and college
- Youth Alcohol Counter-Measures Unit – enforcement and education reducing alcohol-related problems with teenagers

## MEMBERSHIPS/BOARD SERVICE

- American Society of Law Enforcement Trainers (ASLET)
- American Crime Prevention Association (ACPA), 1994, charter member
- Tennessee Law Enforcement Training Officers Association (TLETOA), lifetime member
- International Association of Firearms Instructors
- Domestic Violence Emergency Womens Shelter, Johnson City Salvation Army, board member

## AWARDS/RECOGNITIONS

- Tennessee Officer of the Year, 1984, by State House resolution
- SAVVY state award, 1994, for Citizen Police Academy program
- Friend of Education, 1993, Washington County, Tennessee school system
- N.H.T.S.A., 1991, Highway Safety Administration

# Jeffrey R. (J.R.) Ensor, Sr.
# REQUESTED CASES

(2013)  State of Tennessee v. Keith McCarter – (expert witness for defendant)

(2005)  Angela Jean Henderson v. Michael "Mick" Reyda – (expert witness for defendant)

(2005)  Amy R. Blankenship v. Nazif "Gingi" Bakri and James Caldwell – (expert witness for plaintiff)