IN THE UNITED STATES DISTRICT COURT
                    FOR THE EASTERN DISTRICT OF TENNESEE
                              AT CHATTANOOGA

| | |
|---|---|
| GLENDA CANTRELL, individually, and as mother of CHARLES DOUGLAS BELL, deceased, and on behalf of the wrongful death beneficiary of CHARLES DOUGLAS BELL, deceased, COLYN BRADLEE PETITJEAN BELL. | )<br>)<br>)<br>) Case No.: 1:12-cv-00311<br>)<br>)<br>) |
| Plaintiffs, | ) |
| v. | ) |
| CITY OF CLEVELAND, TENNESSEE; CLEVELAND POLICE DEPARTMENT; WES SNYDER, individually and in his official capacity as police chief of the CLEVELAND POLICE DEPARTMENT, JANSEN VASSEY, individually and in his official capacity as an officer of the CLEVELAND POLICE DEPARTMENT and fictitious defendants a, b, and c. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Defendants. | ) |

**PLAINTIFF'S COMBINED OPPOSITION TO DEFENDANTS CITY OF CLEVELAND, TENNESSEE AND WES SNYDER'S MOTION FOR SUMMARY JUDGMENT, AND DEFENDANT JANSEN VASSEY'S MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** Plaintiff, Glenda Cantrell, as administratix of the Estate of Charles Douglas Bell, deceased, and on behalf of the wrongful death Beneficiaries, in opposition to Defendant City of Cleveland, Tennessee and Wes Snyder's Motion for Summary Judgment, and Defendant Jansen Vassey's Motion for Summary Judgment. As a combined response in opposition, Plaintiff submits the following:

### I.    INTRODUCTION

This is a civil rights action, brought by Glenda Cantrell on behalf of all Beneficiaries for the wrongful death of Charles Bell, due to the conduct and policies of the Defendant, City of

Cleveland, and its police officers. Charles Bell was killed when he was negligently, willfully, wantonly, or intentionally dropped, thrown and/or dangled from the second story balcony of the Whitewater Lodge in Cleveland, Tennessee by Officer Justin Maples (now deceased), while Officer Jansen Vassey complacently watched. *See* Doc. 1. This conduct amounts to a violation of the deceased's right to be free from excessive force, and is substantiated by eye witness testimony from Amanda Shields. *See* Exhibit A, Statement of Amanda Shields. *See also*, Doc. 2.

Moreover, the deliberate indifference shown by the City of Cleveland, as policymaker for the police department and its officers, is apparent in the testimony of the former Chief of Police, Wes Snyder, and the current Chief of Police, David Bishop, as well as Defendant Vassey. Namely, that there were no policies to instruct how to effectuate a risky arrest maneuver, that was encountered often, but never once discussed by City policies, manuals, or training. Exhibit B, Deposition of David Bishop, 55:22 – 56:7. *See also* Exhibit C, Deposition of Wes Snyder, 47:16 – 48:2. Further, the City failed to supervise Officer Maples appropriately, despite knowledge of his repeated troubling conduct.

The conduct and practices of the Defendants violated Mr. Bell's civil rights, and caused his death. This death has changed the lives of his family members forever, and Glenda Cantrell filed this lawsuit to hold the Defendants accountable for their actions. As the testimony provided during discovery by the Plaintiff through document production and deposition supports these claims, and as the testimony of the City's own employees does the same, Plaintiff has met her burden to survive a summary judgment challenge, and the Defendants' motions should be denied.

## II. FACTS

On October 2, 2011, Charles Bell was staying in Room 206 at the Whitewater Lodge, in Cleveland, Tennessee, with his girlfriend, Amanda Shields. Doc. 2. At some point and for a reason unknown to any party in this case, the City of Cleveland Police Department was called by an anonymous source and told that Mr. Bell would be at the lodge. Exhibit D, Deposition of Jansen, 62:21 –64:2. Due to Mr. Bell's outstanding warrants, dispatch requested assistance, and Officer Maples took the call. Vassey Depo., 62:21 –64:2. Officer Maples contacted Officer Vassey to assist him. Vassey Depo., 62:21 –64:2.

Upon arriving outside of Room 206, the Officers stated that they smelled an aroma of marijuana, yet were never able to locate evidence of any kind of drugs or paraphernalia in the room.[1] Vassey Depo.,79:19 – 79:25. Despite standard procedure being that an Officer would investigate the room and detain both individuals in the room, Officers Vassey and Maples did not do so. Vassey Depo., 82:8 – 82:25.

Officer Vassey stood in the open doorway, and he and Officer Maples began questioning Mr. Bell. Vassey Depo., 82:6 – 82:7. The Officers requested that Mr. Bell come outside of the room, and then proceeded to confirm the details told to them by the anonymous source. Vassey Depo., 69:1 – 72:9. The officers determined that he had the requisite haircut, tattoos, and offered the identification of a Roger Bell. *Id.* They also confirmed that he was unarmed outside of a knife that he willingly identified and allowed them to obtain. *Id.*

---

[1] Interesting enough, the Officers cite this fact in their report, but never made an attempt to arrest Mr. Bell or Ms. Shields due to this reason. The Officers also never made an attempt to search the room immediately. Vassey Depo, p. 83:1 – 83:20.

3

Officer Vassey states that they then requested that Mr. Bell move toward the railing, where he leaned against it, and crossed his arms. *Id.* Then, the Officers told Mr. Bell that he was under arrest for the four outstanding warrants. *Id.*

At this point, the facts become disputed in that Mr. Bell's girlfriend states that as Mr. Bell grabbed the railing, and hiked one leg up, Officer Maples proceeded to push Mr. Bell over the railing and dangle him over the balcony while Officer Vassey watched and did nothing to help. *See* Exhibit A. Officer Maples dropped Charles Bell, head first, to his death, where he cracked his skull on the pavement and died. *Id*. Officer Vassey submits a different recount, in that somehow Mr. Bell vaulted himself over the railing, and tripped, falling to his death without any contact from either Officer. Vassey Depo., 72:10 – 72:22.

It is clear from the record, and there is no dispute, that the City of Cleveland offered no training or policy that provided guidance as to how police officers must effectuate an arrest from a position of perilous height. *See* Cleveland Police Department General Orders Manual, August 2009, attached hereto as Exhibit E. *See also* Bishop Depo., 55:22 – 56:7. In other words, the City failed to train its officers how to make an arrest in such a situation. The City failed to train how to avoid likely problems in such a situation, that former Police Chief Wes Snyder admitted was a routine occurrence. Snyder Depo., 47:16 – 48:2.

Ultimately, this dispute between the parties' positions is why this case should go to trial. Plaintiff adequately alleges an excessive force violation on behalf of both officers, and a failure to train violation on behalf of the City. Therefore, the Defendants' motions should be denied.

## III. ARGUMENT

Plaintiff Glenda Cantrell[2] has met her burden in showing enough evidence that a reasonable jury would decide in her favor, if all facts alleged are taken as true. Particularly, her claims against Officer Vassey must stand, as his actions were objectionably excessive in his use of force, and he is not privileged to a defense of qualified immunity. The City is also liable for its failure to train and/or implement policies that would have prevented Mr. Bell's death from occurring. Thus, the Defendants' motions for summary judgment should be denied.

### A. Standard of Review

The role of summary judgment is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (quoting *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir. 1990)). The burden is on the moving party to show, through the pleadings, discovery and affidavits, "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* A genuine issue of material fact exists where the evidence with respect to the material fact in dispute "is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Once the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine, triable issue. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

---

[2] Both Defendants attempt to rearticulate the same argument in their recently filed motions to dismiss that Ms. Cantrell does not have standing to file suit on behalf of the estate. In the interest of judicial efficiency, Plaintiff will not rehash the same arguments but does ask that the Court incorporate her briefings in opposition to the motions to dismiss, by reference, as supplied in Doc. 46.

5

The Court must view the entire record in the light most favorable to the non-moving party and indulge all reasonable inferences in that party's favor. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). Summary judgment is only appropriate if, after viewing the record in the non-moving party's favor, the Court determines that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law.

Plaintiff has met her burden and shown that a triable issue of fact exists. Accordingly, Defendants' motions should be denied.

**B.     Defendant Officer Jansen Vassey's Motion is Due to Be Denied Because His Actions Amounted to Excessive Force Violations**

*1. Defendant Officer Vassey's Actions were Excessive*

Plaintiff's claims, taken as true, and substantiated by the evidence and testimony produced to this point, indicate that Officer Vassey's actions were objectively excessive. "To prevail on [a] § 1983 claim, [plaintiff] 'must establish that a person acting under color of state law deprived [her] of a right secured by the Constitution or laws of the United States." *Sample v. Bailey*, 409 F.3d 689, 695 (quoting Waters v. City of Morristown, 242 F.3d 353, 358-59 (6th Cir. 2001)). Ms. Cantrell alleges that the City and Officers Vassey and Maples violated Mr. Bell's Fourth Amendment rights by using excessive force upon him and causing his death, without justification.

Where, as here, a person contends that a police officer used excessive force in the context of a stop or arrest, the claim is analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 394–395 (1989). While the reasonableness standard "is not capable of precise definition or mechanical application," its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the

crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight. *Id*. at 396.

It is black-letter law that, in making an arrest or an investigatory stop, police officers have the right to employ "some degree of physical coercion or threat thereof to effect it." *Id.* Officers must "make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous and rapidly-changing circumstances," and, for that reason, "not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" will give rise to a constitutional violation. *Id.* The amount of force used, however, must be reasonable.

In this instance, neither party disputes the severity of the warrants or actions of Mr. Bell. He was not armed, and was not known to be violent or be wanted for any conduct reasonably necessitating force. In fact, he willingly gave away his knife when approached by the officers. There has been no testimony to show that either officer thought Mr. Bell was a threat to their safety or to the safety of others.

What is in dispute is the cause and nature of Mr. Bell's death. Taken as true, Plaintiff avers that Mr. Bell was thrown and/or caused to dangle over the balcony by the Defendant officers. *See* Exhibit A. Defendant Officer Vassey simply states, unconvincingly, that Mr. Bell somehow managed to propel himself over a four foot high railing with both officers standing next to him, and a pole immediately in front of Mr. Bell restricting where his feet would have gone. *See* Exhibit F, drawing attached to Officer Vassey's Deposition. A jury should determine the veracity of Officer Vassey's testimony.

The parties are the only witnesses to the collision and no additional evidence tends to discredit either side's account. A reasonable finder of fact could return a verdict for either side on the excessive force claim, depending on whose version of the story it believes[3]. Compare *Argo v. Woods*, 399 Fed. App'x 1 (5th Cir. 2010) (affirming jury finding that officers used excessive force because they threw a suspect off his porch without probable cause to arrest him), with *Dennis v. Upshaw*, 9 F.3d 1547 (5th Cir. 1993) (affirming bench trial finding that officers did not use excessive force because defendant initiated altercation).

Because the parties dispute who caused Mr. Bell's death from over the balcony, summary judgment is unwarranted on this Count. *See Totten v. City of Torrance*, No. CV 10-7050-ODW, 2011 WL 4528191, at *5 (C.D. Cal. Sept. 30, 2011) (denying summary judgment on excessive force claim because of factual dispute over which party initiated contact). Plaintiff's version must be taken as true, as a reasonable jury could likely conclude that Officer Vassey's use of force was excessive. Thus, his motion should be denied.

### 2. *Officer Vassey is Not Entitled to Qualified Immunity as it was Unreasonable to Allow Mr. Bell to be Dangled and Dropped Off the Balcony*

Officer Vassey should not be shielded by qualified immunity when a reasonable officer would not have allowed Mr. Bell to have been dangled and dropped, head first, from a hotel balcony. "Qualified immunity is an affirmative defense which shields government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Sweat v. Shelton*, 2012 U.S. Dist. LEXIS 96087, 19 (M.D. Tenn.

---

[3]To the extent that Officer Vassey's reference to an expert report could fall into the same argument that the City makes, in that a determination of reasonable use necessitates an expert report, Plaintiff notes that an expert report is not required for this determination. *See Churchwell v. Bluegrass Marine, Inc*., 444 F.3d 898, 905 (6th Cir. 2006)(citation omitted) ("'expert testimony does not assist where the jury has no need [ ] for an opinion because it easily can be derived from common sense, common experience, the jury's own perceptions, or simple logic.'").

July 10, 2012). The Sixth Circuit has set forth the analysis for a defense of qualified immunity's application:

> [A]s a precursor to the *Harlow* qualified immunity analysis, a court must first determine whether any constitutional violation occurred, let alone the violation of a clearly established right. *E.g., Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Jackson v. Leighton*, 168 F.3d 903, 909 (6th Cir. 1999). Consequently, if [the court] find[s] no constitutional violation, then the case must be dismissed at this threshold stage[.] Where a constitutional violation exists, the court must next determine whether the right infringed was clearly established-by decisions of the Supreme Court, this Court, or other Courts of Appeal-at the time the defendant allegedly infringed it. *See Higgason v. Stephens*, 288 F.3d 868, 876 (6th Cir. 2002) (citing *Walton v. City of Southfield*, 995 F.2d 1331, 1336 (6th Cir. 1993)). Finally, if the right is clearly established, we cannot impose liability on a state official unless "the plaintiff has alleged sufficient facts, and supported the allegations by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right[ ]." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999)(en banc) (citing *Dickerson v. McClellan*, 101 F.3d 1151, 1157-58 (6th Cir. 1996)).

*McKinley v. City of Mansfield*, 404 F.3d 418, 429-30 (6th Cir. 2005).

Because Plaintiff has alleged an excessive force violation, the relevant inquiry is then "whether the officers' use of force complied with that allowable under the Fourth Amendment." *Simmonds v. Genesee County*, 682 F.3d 438, 444, 2012 U.S. App. LEXIS 12347, 2012 WL 2290981 at * 5 (6th Cir. June 19, 2012). "Any claim of excessive force is evaluated under the objective standard of 'whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Id.* (quoting, <u>Graham v. Connor</u>, 490 U.S. 386, 397, 109 S. Ct. 1865, 104 L. Ed. 2d 443 (1989)).

The facts thus far indicate that Officer Vassey stood by and watched, without intervening

whatsoever, and allowed Officer Maples to cause Mr. Bell to trip, then dangle and throw him over a balcony ledge. All of this occurred while Officer Vassey was less than an arms-length away. No reasonable officer would allow this to occur.[4]

In this case, "the jury becomes the final arbiter of [a Defendant's] claim of immunity, since the legal question of immunity is completely dependent upon which view of the facts is accepted by the jury". *Brandenburg v. Cureton*, 882 F.2d 211, 215-16 (6th Cir. 1989). As such, Defendant Officer Vassey is not afforded qualified immunity, and his motion should be denied.

### 3. *Plaintiff is Entitled to Punitive Damages*

Defendant's only argument against the imposition of punitive damages is a brief statement that no showing of "reckless or callous indifference" has been made. Certainly, allowing a non-armed, non-violent citizen to be thrown over a balcony would fall in the realm of a "reckless or callous indifference" to the federally protected right of Mr. Bell to be free of said seizure. As Defendant has offered nothing more than a blank recitation of a legal standard, the jury should also be allowed to decide the issue of punitive damages, and make such a determination at trial.

### C. **Defendant City of Cleveland, Tennessee's Motion is Due to Be Denied Because its Policies and Practices Condone and/or Turn a Blind Eye to Likely Civil Rights Violations, Including the Death of Charles Bell**

The City's utter failure to address the circumstances that caused the death of Charles Bell amount to a failure to train, as their policies and training were and are, inadequate. Moreover, The City failed to address the problematic behavior of Defendant Maples, and essentially condoned his behavior, which then resulted in Mr. Bell's death. The City's actions, or lack

---

[4] *See Masel v. Barrett*, 707 F. Supp. 4, 9 (D.D.C. 1989) ("a reasonable officer certainly should have known that he had at the very least a common law duty to intervene to protect plaintiff from an assault allegedly perpetrated by a subordinate officer in defendant's presence").

10

thereof, amount to a deliberate indifference of the rights of Mr. Bell, and a jury should be allowed to hear the case against it.

For liability to attach to a City under the well established *Monell* rationale, in addition to establishing a constitutional deprivation, the plaintiff must show that: 1) the municipality had a custom, policy or practice of failing to investigate, discipline, supervise or train its officers, which 2) demonstrated a "deliberate indifference" to the rights of those citizens with whom its officers came into contact and 3) directly caused the alleged constitutional violation. *Monell v. Dept. of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978).

In this instance, there are two specific failures on behalf of the City of Cleveland that attach *Monell* liability: 1) the failure to train how to effectuate an arrest at a high and/or dangerous altitude, and the safety precautions that must be considered, and 2) the failure to supervise or investigate the clearly troubled history of Defendant Officer Maples. These failures on behalf of the city, demonstrated a deliberate indifference to the rights of the citizens of Cleveland, Tennessee, and ultimately and directly caused the constitutional deprivations suffered by Mr. Bell.

As to the first failure, the evidence is uncontroverted that the Cleveland Police Department, and the City of Cleveland, offer no training to its officers as to how to effectuate an arrest at a dangerous height. *See* Exhibit D. *See also* Bishop Depo., 55:22 – 56:7. It is also undisputed that the City offers no training whatsoever about the risks and safety precautions that are necessary to arrest a citizen from such a height. *See* Exhibit D. *See also* Bishop Depo., 55:22 – 56:7.

And while it is true that the Plaintiff has offered no expert report in this matter, that would only be relevant if this argument was a matter of degree.[5] Because the City does not deny that it offers no training whatsoever in this regard, it does not take an expert to see that this failure is readily apparent. A reasonable jury can effectively determine issues of common sense and objective reasonability, such as whether or not its police force should require or administer some training that addresses how its officers should arrest citizens from dangerous heights, and what safety precautions they must be aware of. Indeed, this question is ripe for a jury to decide, and the citizens of Cleveland, Tennessee should be allowed to make that determination.

As to the second failure, the personnel file of Officer Maples shows a clear pattern of abuse and indiscretion, particularly involving improper or questionable use of force. In his deposition, current Police Chief Bishop acknowledged the existence of five internal affairs investigations involving Defendant Officer Maples from 2009 to his death in 2012. Bishop Depo 71:1 – 76-25. In fact, Chief Bishop also acknowledged that was a high number compared to the rest of the police force. *Id*. Yet, the department never suspended or attempted to discipline Officer Maples in a manner that might make him change his ways, nor did the department discipline him after the incident made the basis of this lawsuit

Eventually, Officer Maples would die in the line of duty. But not before causing the death of Charles Bell. And for that, the City must take responsibility. The City cannot hide behind handbooks and accreditations if the reality is, its policies caused the death of a citizen for no reason. If the City had properly supervised and trained Officer Maples, then the violations suffered by Mr. Bell would not have happened.

---

[5] For instance, if the City did offer training on this subject, but Plaintiff's argument was simply that it was improper, or did not go far enough. Where, however, there is an instance of no policy at all, a jury can easily determine the failure of the City to include such training in the department. They will be free to make that determination in the face of the Defendants' own expert as well.

The record is clear as to these issues of municipal liability. Much of the evidence comes from the testimony of the City's own police officers, and two police chiefs. Accordingly, Plaintiff has met her burden to allow a jury to hear these issues, and the City's motion should be denied.

## IV.  CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Plaintiff Glenda Cantrell, on behalf of the beneficiaries of the estate of Charles Douglas Bell, deceased, respectfully requests that this Court deny the motions for summary judgment filed by Defendant Officer Vassey and Defendant City of Cleveland.

Respectfully Submitted,

/s/ D.G. Pantazis, Jr.
D.G. Pantazis, Jr.

**OF COUNSEL**:
WIGGINS, CHILDS, QUINN & PANTAZIS, LLC
The Kress Building
301 Nineteenth Street North
Birmingham, Alabama 35203
Telephone: (205) 314-0500
Fax: (205) 254-1500

J.D. Lee
Law Offices of J. D. Lee
The Lee Building
422 S. Gay Street, Third Floor
Knoxville TN 37902
Phone: (865) 544-0101
Fax: (865) 522-9945

*Attorneys for Plaintiff*

# CERTIFICATE OF SERVICE

I hereby certify that on the 11th day of March, 2014, I electronically filed the foregoing with the clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Benjamin K. Lauderback
>Emily A. Cleveland
>Robert H. Watson, Jr.
>WATSON, ROACH, BATSON, ROWELL & LAUDERBACK PLC
>1500 Riverview Tower
>900 South Gay Street
>Post Office Box 131
>Knoxville, Tennessee 37901-0131
>
>Ronald D. Wells
>Keith H. Grant
>ROBINSON, SMITH & WELLS
>633 Chestnut Street
>Suite 700, Republic Centre
>Chattanooga, Tennessee 37450

/s/ D.G. Pantazis, Jr.
Of Counsel